GEORGIA,
Chatham Co.
JAN. 1808.

Lloyd
vs.
Smith.

*Minutes of Superior Court, letter F. p.* 418.

*January Term,* 1808.

EDWARD LLOYD *vs.* WILLIAM SMITH.

### JUDGE.

*Thomas U. P. Charlton,* now one of the Judges of the Superior Courts of this state, and presiding in this court during the present term, having, when a member of the bar, been retained as of counsel for the defendant, *William Smith,* it is contended, that that is a species of interest contemplated by the act of the General Assembly, authorising the interposition of the justices of the inferior court, in all cases where the judge of the Superior Court is a "*party,* or *interested.*" Laws of the General Assembly.

A rule was granted to show cause why the justices of the inferior court should not be requested to attend and preside in the trial of this case.

In showing cause, the counsel for the defendant objected to the interposition of the justices of the inferior court;

1. Because the law was unconstitutional.  2. Because the interest contemplated by the act was not an abstract bias resulting from the feelings of a retained attorney, but such an *interest* as is created by an ultimate participation in the damages, or property recovered by the verdict of a jury.

In support of the rule it was urged, that the law was not unconstitutional, 1. Because it did not interfere with any exclusive power delegated by the constitution to the Superior Court, but only authorize an interference of the justices of the inferior court, in cases where the jurisdictions possessed a concurrent authority ; and, 2. Because the interest contemplated in the act was such an interest as was calculated to bias the mind of the judge, or to produce a prejudication which would result from his having received a fee as counsel for one of the parties.

GEORGIA,
Chatham Co.
DEC. 1808.

Lloyd
vs.
Smith.

*By the Court.*

My first impressions were with the plaintiff's counsel, and under the influence of those impressions, I intimated at the last Superior Court, of Bulloch county, that I would feel no difficulty in requesting the attendance of the justices of the inferior court in cases like the present. I then conceived, that where the judge had acted as an attorney, and received a fee from one of the parties, it would or might create an interest in his mind and feelings incompatible with an unprejudiced, impartial discharge of his duty, and that *if such might be the result*, it was an " *interest*" intended to be guarded against by the act of the General Assembly.

The decision in Bulloch was not then, nor has it been since acted upon ; and as I discovered that it had not given general satisfaction, I consented to grant the present rule, in order that I might avail myself of the advantages which always accompany the arguments of my learned brethren of the bar.

I am *now* of opinion (and that opinion, with the exception of counsel for the plaintiff, is concurred in by this bar,) that the term " *interested*" ought not to be taken in its common acceptation, or as used by philologists, but that it must receive a legal and technical import,—an import having a relation (as it was emphatically observed by my brother *Harris*) to " *pounds, shillings, and pence ;*" that is to say, an advantage to be derived, or more properly, a right to be established, and last, by the verdict of a jury. Such an *advantage*, or such a *right*, as a " party" to the action expects to gain, or to be deprived of. The agency of attornies, and the fees they may have received, repel the idea of such an advantage or such a right.

Having decided on this point, an opinion on the constitutionality of the law, becomes unnecessary ; and I am glad that it is so ; for, although I should not hesitate giving an opinion on that point, when the principles of justice and the case may require it, yet I shall always avoid a conflict with the legislative department by *voluntary* declarations.